# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00702-COA

**RICHARD COLL**                                                                   **APPELLANT**

**v.**

**WAL-MART STORES EAST, L.P.**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2016 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | ROBERT ELLIOTT BRIGGS III MYLES ETHAN SHARP |
| ATTORNEYS FOR APPELLEE: | WILBUR PEMBLE DELASHMET ASHLEY POWELL GRIFFIN MIGNON MESTAYER DELASHMET CHAD CHRISTOPHER MARCHAND |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEE |
| DISPOSITION: | AFFIRMED: 05/30/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Richard Coll brought a slip-and-fall claim against Wal-Mart Stores, East L.P. and

Coca-Cola Bottling Company United Inc. after allegedly falling on a Coca-Cola display.[1]

Wal-Mart moved for summary judgment, arguing that there was no evidence that Wal-Mart

---

[1] Coll later amended his complaint to include Coca-Cola employee Stephen Irby. Between the filing of the original complaint and the amended complaint, the case was removed to federal court and then remanded to state court.

was negligent in creating a dangerous condition or that Wal-Mart had any actual or constructive knowledge of a dangerous condition. The circuit court granted Wal-Mart's motion.[2] Finding no error, we affirm.

**FACTS**

¶2. On September 16, 2013, Coll went shopping at a Wal-Mart in Biloxi, Mississippi. In the main "action alley," there was a Coca-Cola display with Coca-Cola products stacked on pallets. Coll stepped into the display to grab some drinks. As he exited the display, he slipped and fell on his left side, fracturing his hip. One of the display signs was near him on the floor. Coll stated in his deposition that he did not see anything on the floor when he entered the display. He admitted he was not sure what caused him to fall, but concluded it was the sign because he "had to slip on something."

¶3. Stephen Irby, a senior merchandiser for Coca-Cola, testified that he was responsible for designing and building the display. He was restocking the display when Coll approached. Irby said he stepped away from the display to let Coll grab some drinks. He further stated that Coll accidentally kicked the sign when he was exiting the display, causing the sign to fall. Irby testified that Coll did not slip on the sign. He also testified that there were still at least two cases of drinks on that corner of the display (where Coll fell). After Coll's fall, Irby continued restocking the display.

---

[2] Due to Coll's settlement with Coca-Cola, the circuit court dismissed all his claims against Coca-Cola.

¶4.    Two Wal-Mart employees – Amanda Campisi and Zena Mullins – testified by deposition, although neither witnessed Coll's fall. Mullins was the first Wal-Mart employee to arrive after Coll's fall. Coll was still on the floor. Contrary to Coll and Irby's testimony, Mullins stated that the corner of the display had no drinks on it when she arrived. When asked whether that was the way it was supposed to be, she said no. Mullins also stated that it was not her responsibility to determine what happened.

¶5.    Campisi was an assistant store manager at the time of Coll's fall and was assigned to investigate the incident. She stated, like Mullins, that the corner of the display had no drinks on it when she arrived. Campisi recalled that Irby and Mullins were there. She saw Coll on the floor and noticed some cardboard sitting near him. About thirty minutes after Coll was taken away in an ambulance, Campisi took pictures of the area. Since Irby had continued restocking the display, the pictures were not helpful for trial.

¶6.    Wal-Mart provided a DVD recording of the incident, but, due to technical difficulties, the court was unable to review the DVD. At the summary judgment hearing, both parties agreed that viewing the video was unnecessary.

## STANDARD OF REVIEW

¶7.    "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it . . . ." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

3

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶8.     "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10). Still, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Furthermore:

> [W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Galloway v. Travelers Ins.*, 515 So. 2d 678, 684 (Miss. 1987).

### DISCUSSION

¶9.     There is no dispute that Coll was a business invitee. *See Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005) (defining business invitee as "someone who enters onto another's premises at the invitation of the owner for the purpose of benefitting both parties"). The owner of a business is not required to insure against all injuries, even for an invitee; rather, he "owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." *Robinson v. Ratliff*, 757 So. 2d 1098, 1101-02 (¶12) (Miss. Ct. App. 2000). Mere proof "of the occurrence of a fall on a floor within [the] business premises is

4

insufficient to show negligence on the part of the proprietor." *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97 (¶8) (Miss. Ct. App. 2010) (quoting *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶6) (Miss. Ct. App. 2003)).

¶10.    Coll must prove either (1) that Wal-Mart's negligence injured him, (2) that Wal-Mart had knowledge of the dangerous condition and failed to warn him, or (3) that the condition existed for a sufficient amount of time so that Wal-Mart should have had knowledge or notice of the condition (constructive knowledge). *Anderson v. B.H. Acquisition Inc.*, 771 So. 2d 914, 918 (¶8) (Miss. 2000) (citation omitted).  We address each contention below.

### 1.    Negligent Act

¶11.    Coll claims that Wal-Mart defectively designed the display. He relies on *Hardy ex. rel. Hardy v. K Mart Corp.*, 669 So. 2d 34 (Miss. 1996) ("*Hardy I*"), and *K-Mart Corp. v. Hardy ex. rel Hardy*, 735 So. 2d 975 (Miss. 1999) ("*Hardy II*"), in support of his argument. Both cases involved customer Marion Hardy, who slipped and fell in spilled paint near a paint display at K-Mart. *Hardy I*, 669 So. 2d at 36; *Hardy II*, 735 So. 2d 975 (¶2).

¶12.    In *Hardy I*, the circuit court granted summary judgment, finding that Hardy failed to show that K-Mart was negligent in stocking the paint cans or that K-Mart had actual or constructive notice of the spill. *Hardy I*, 669 So. 2d at 37.  The Mississippi Supreme Court reversed on the negligence issue, finding there was a genuine issue of material fact as to whether the paint display was unstable, causing the spill. *Id*. at 38.  On remand, the jury found that K-Mart was negligent and awarded Hardy $250,000. *Hardy II*, 735 So. 2d at 978

(¶1). In *Hardy II*, K-Mart appealed the jury verdict, and the supreme court affirmed. *Id*. at 980 (¶41).

¶13.     In both cases, the K-Mart assistant store manager testified about his involvement with the paint display.  He stated that he was in charge of the display configurations and that K-Mart's corporate offices constructed the displays.  *Hardy II*, 735 So. 2d at 979 (¶6).  He further stated that any display with paint cans stacked higher than three layers without cardboard would be unsafe, and that the open paint can on the floor was the same color as the cans of the display.[3]  *Hardy I*, 669 So. 2d at 38-39; *Hardy II*, 735 So. 2d at 979 (¶6).

¶14.     The *Hardy* cases are readily distinguishable from the present case.  Contrary to the store manager in *Hardy*, Irby did not work for the store at issue.  Further, he testified that he, as a Coca-Cola employee, was solely responsible for designing and building the display.  There was no evidence presented showing Wal-Mart had any involvement in constructing or maintaining the Coca-Cola display.  Nor was there testimony indicating that the Coca-Cola display was somehow faulty.

¶15.     Even though Wal-Mart cannot be liable under the theory of defective design, it still had a responsibility to maintain its premises in a reasonably safe condition.  However, Coll has failed to present any evidence as to how any Wal-Mart employee created the condition

---

[3] The assistant manager based his testimony on a photograph (allegedly taken within three weeks of the accident) of the display showing the paint stacked in five layers.  *Hardy I*, 669 So. 2d at 38.  There was conflicting evidence as to when the cans were stacked above three layers and whether a K-Mart employee or customer stacked the cans that high.  *Id*.

that allegedly caused his fall. Thus, we find Coll failed to create a genuine issue of material fact as to Wal-Mart's negligence.

### 2. Actual or Constructive Knowledge

¶16. Coll argues that Wal-Mart had actual or constructive knowledge of "dangers associated with the display." As discussed above, Coll failed to show how Wal-Mart had any input with the design or construction of the display. So the question is whether Wal-Mart had actual or constructive notice that the sign had fallen.

¶17. Coll testified that he was in the store for about two minutes. He said that the sign was there when he entered the display. He also said he did not see the sign before he fell but it was on the floor afterward. Irby testified that he saw Coll accidentally kick the sign. So the sign either fell or was knocked off as Coll exited the display. Based on the testimony, Coll's arrival and his fall happened within a matter of seconds. We were able to review the DVD (not viewed at the summary judgment hearing), which showed merely seventeen seconds between Coll's entering the display and his fall. After reviewing the record, we find that Coll failed to present any evidence showing that any Wal-Mart employee knew or should have known that the sign had fallen onto the floor.

¶18. We find the circuit court's grant of summary judgment in favor of Wal-Mart was proper. Therefore, we affirm.

¶19. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND WESTBROOKS, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**